IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IMEN GHARBI, et al., | : | |
| | : | |
| Plaintiffs, | : | 1:19-CV-1943 |
| v. | : | (JUDGE MARIANI) |
| | : | |
| THE UNITED STATES, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

### I.   INTRODUCTION AND PROCEDURAL HISTORY

On November 12, 2019, Plaintiffs Imen Gharbi and Hattab Gharbi, as co-administrators of the estate of E.G., deceased, and individually and in their own right, filed a Complaint against Defendant United States of America, alleging medical malpractice under the Federal Tort Claims Act ("FTCA"), as the result of the death of baby E.G. in December, 2017.  (Doc. 1).  The Complaint alleges a survival action (Count I), wrongful death (Count II), and negligent infliction of emotional distress (Count III).  (*Id.*).

On December 29, 2020, following the close of fact discovery, Defendant filed a Motion for Summary Judgment (Doc. 45).  The motion was thereafter referred to Magistrate Judge Martin Carlson for the preparation of a Report & Recommendation ("R&R").

Now before the Court is a R&R (Doc. 54) by Judge Carlson in which he recommends that the Government's Motion for Summary Judgment be denied.  Defendant filed

Objections (Doc. 55) to the R&R.  Plaintiffs filed a response to Defendant's Objections (Doc. 56) and the Government filed a Reply brief (Doc. 57).[1]

## II. ANALYSIS

A District Court may "designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition" of certain matters pending before the Court.  28 U.S.C. § 636(b)(1)(B).  If a party timely and properly files a written objection to a Magistrate Judge's Report and Recommendation, the District Court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  *Id*. at § 636(b)(1)(C); *see also, Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011); M.D. Pa. Local Rule 72.3.

Here, Defendant sets forth three objections to the Magistrate Judge's R&R. Because the Objections all rest on the same basic argument, the Court will address them together.

In its brief in support of the Objections, Defendant first argues that "the evidence on which the expert opinions rest does not raise issues of fact because both parties agree that the fetal heart tracings do not establish acidosis."  (Doc. 55, at 2-6).  Defendant states that "Plaintiffs' alleged injury is acidosis" and that, where Plaintiffs "suggest no alternative or

---

[1] This action was previously assigned to the Honorable John Jones.  The case was reassigned to the undersigned on August 2, 2021, upon the retirement of Judge Jones.

additional injury or condition that might have caused the baby's death", acidosis is the only

injury at issue.  (Doc. 55, at 2).  Thus, Defendant argues that the R&R is deficient where it

"does not address the (lack of) evidence of acidosis", which is the subject of Defendant's

motion.  (Doc. 55, at 3).  Defendant further asserts that the R&R, relying on Plaintiffs' expert

medical opinions, "erroneously" states that there are disputed issues of fact where the

experts' opinions and conclusions with respect to negligence and causation "have no basis

or relevance until the fact of acidosis is established."  (Doc. 55, at 4-5).  Simply stated,

"plaintiffs cannot meet their burden to show the injury they claim occurred."  (Doc. 55, at 5).

In its second Objection, Defendant argues that the R&R incorrectly characterized the

Government's arguments as asserting that no triable issues of fact existed as to causation

or negligence.  Rather, Defendant states that its motion "does not attack the experts'

opinions on negligence or breach of standard of care."  (Doc. 55, at 6-7).  Similar to its first

objection, Defendant reiterates that its summary judgment motion "addresses the injury or

condition that plaintiffs assert was caused by negligence, i.e. acidosis", which the

Government claims Plaintiffs have not established.  (Doc. 55, at 6-7).  Defendant argues

that its summary judgment motion "offers no disputed issue of fact, resting as it does solely

on plaintiffs' experts' own testimony."  (Doc. 55, at 7).

The Government's final Objection disputes Judge Carlson's statement that a *Daubert*

hearing "would be the proper vehicle for determining the admissibility of an expert's opinions

that are attacked as unreliable."  (Doc. 55, at 7-9) (quoting Doc. 54, at 18).  Specifically,

3

Defendant asserts that its summary judgment motion "is limited to whether acidosis is proved by the fetal heart tracings" and that Defendant "does not attack the experts' testimony on fetal heart tracings as unreliable." (Doc. 55, at 8).

> Explicitly, the motion takes plaintiffs' experts at their word as to the critical issue here – that the fetal heart tracings are not adequate to show hypoxia (lack of oxygen) severe enough to be acidosis.  Defendant does not dispute that plaintiffs' experts are credible and reliable on this point of fact.

(Doc. 55, at 8).  Defendant further "does not dispute the experts' qualifications, or their understanding of the information to be gleaned from the fetal heart tracings." (Doc. 55, at 8).

Defendant's objections, and statements therein that it is not disputing that triable issues of fact may exist as to causation and negligence, present this Court with only a narrow issue; specifically, whether there is a genuine dispute of material fact as to the injury alleged to have been caused by negligence.  Although Defendant contends that this "injury" consists of acidosis, which they state the medical opinions of Plaintiffs' experts fail to adequately support, Plaintiffs more broadly characterize the "injury" at issue as "death from hypoxia" or hypoxic-induced death (*see* Doc. 56, at 3, 4); (*see also*, *e.g.*, Pls. Br. in Opp. to Def.'s Motion for Summ. J., Doc. 49 ("It is Plaintiffs' contention that the cause of the Gharbis' baby's death was intrauterine demise due to hypoxia-induced decelerations and acidosis during prolonged labor induction and delivery.").  Nonetheless, while Plaintiffs assert that hypoxia was the *cause* of death, Plaintiffs more properly characterize the injury in this case as "death", suggesting that the specific cause is unnecessary to establish at this time. (Doc. 56, at 5).  The Court agrees with Plaintiffs.

4

Here, there is no dispute that, while at the hospital and under the care of Dr. Potacia Francis, a physician employed by a federally funded health clinic, Plaintiffs' baby, E.G., died.  (*See* Doc. 46, ¶¶ 2, 4, 6; Doc. 47, ¶¶ 2, 4, 6).  Defendant's argument that Plaintiffs have failed to present sufficient evidence that E.G. died from acidosis goes directly to the *cause* of injury, an element of negligence which Defendant unequivocally asserts is not the subject of its motion for summary judgment.

Defendant argues that Plaintiffs' experts' testimony "that the fetal heart tracings are non-definitive for acidosis" demonstrates there is "not enough evidence to allow reasonable minds to conclude that acidosis occurred" (Doc. 55, at 6).   However, here, the injury is death and the issue therefore is whether the baby's death was caused by Defendant's negligence, and specifically, whether Plaintiffs can meet their burden of establishing that acidosis and/or hypoxia caused the baby's death as they contend.

Defendant's claim that it is not arguing that no disputed facts exist as to causation, but rather that Plaintiffs cannot preliminarily establish that acidosis occurred ignores certain portions of Plaintiffs' experts' reports and testimony and impermissibly imposes a higher burden of proof on Plaintiff than is required.  Defendant suggests that Plaintiffs' experts' inability to "definitively" state that "whether or to what degree acidosis occurred" entitles it to summary judgment in its favor.  (Doc. 55, at 3).  However, both experts testified to a reasonable degree of medical certainty that E.G. died of acidosis and the experts further detailed other ways in which they believed the Defendant deviated from the standard of

care. [2]  To the extent that Defendant believes that the Plaintiffs' experts' opinions set forth in

their reports and deposition testimony are undercut by other testimony those experts' gave,

that argument goes to the weight the trier of fact chooses to assign that testimony.  As

Judge Carlson correctly explained, "it is emphatically not the province of the court to weigh

evidence or assess credibility when passing upon a motion for summary judgment."  (Doc.

54, at 17).  The expert reports and expert testimony presented by Plaintiffs create factual

---

[2] As stated by Dr. Mauldin during her deposition:

Q. So Dr. Maudlin, is it your opinion, to a reasonable degree of medical certainty, that this baby died of acidosis?
A. Yes.
Q. Is it your opinion, to a reasonable degree of medical certainty, that this baby had hypoxic episodes that led to acidosis?
A. Yes.
Q. Is it your opinion, to a reasonable degree of medical certainty, that acidosis was the sole cause of his death?
A. Yes.

(Dep. of Dr. Maudlin, at 141); (see also, e.g., Supp. Report of Dr. Maudlin, Doc. 48-9, at 5 ("Based on my additional review of this case, it remains my opinion to a reasonable degree of medical certainty that the management of Mrs. Gharbi's labor and delivery fell below the standard of care and resulted in the unnecessary death of her baby from acidosis/hypoxia.")).

Further, Plaintiffs' other medical expert, Dr. Hammers, testified:

Q. Does it remain your opinion, then, to a reasonable degree of medical certainty, that the cause of this baby's sudden death was due to hypoxia-induced decelerations and acidosis during prolonged labor induction and delivery?
. . .
A. Okay. Yes, that remains my opinion.

(Dep. of Dr. Hammers, at 155-156); (see also, Report of Dr. Hammers, Doc. 48-11, at 5 ("As a result of my independent review, it is my professional opinion, based upon a reasonable degree of medical certainty that the cause of death for [E.G.] was Intrauterine fetal demise due to hypoxia induced decelerations and acidosis during prolonged labor induction and delivery.")).

disputes which require that credibility assessments be made of the testimony to be presented at trial.[3]

Here, drawing all reasonable inferences in the light most favorable to the plaintiffs, the record evidence demonstrates the existence of a number of genuine factual disputes which must await resolution at trial.  Despite Defendant's assertions to the contrary, it is not for this Court to deem the opinions of Plaintiffs' experts so infirm or unreliable so as to find that summary judgment is appropriate based on Defendant's contention that there is "insufficient evidence for plaintiffs to prove that acidosis occurred" (Doc. 55, at 7).

### III. CONCLUSION

For the reasons set forth above, upon *de novo* review of Magistrate Judge Carlson's R&R (Doc. 54), the Court will overrule Defendant's Objections (Doc. 55) and adopt the

---

[3] *See Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764 (3d Cir. 2013):

Under Rule 56, . . . a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The party asserting that there is a genuine dispute of material fact must support that assertion by "citing to particular parts of ... the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations..., admissions, interrogatory answers, or other materials." Fed.R.Civ.P. 56(c)(1)(A). In evaluating the motion, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

716 F.3d at 772.  *See also*, *Doebblers' Penn. Hybrids, Inc. v. Doebbler*, 442 F.3d 812, 820 (3d Cir. 2006)(stating that credibility determinations "are inappropriate to the legal conclusions necessary to a ruling on summary judgment. . . .A District Court should not weigh the evidence and determine the truth itself, but should instead determine whether there is a genuine issue for trial."); *J. F. Feeser, Inc. v. Serv-A-Portion, Inc.,* 909 F.2d 1254, 1531 (3d Cir. 1990) ("We are keenly aware that credibility determinations are not the function of the Judge; instead the non-movant's evidence must be credited at this stage.").

R&R.  The Government's Motion for Summary Judgment (Doc. 45) will thus be denied.  This

action will be scheduled for a non-jury trial before this Court.

      A separate Order follows.

Robert D. Mariani
United States District Judge